IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

CHRISTIANS IN THE WORKPLACE
NETWORKING GROUP,

      **Plaintiff,**

v.                                              No. 1:22-cv-0267 DHU/DLM

NATIONAL TECHNOLOGY AND
ENGINEERING SOLUTIONS OF
SANDIA, LLC; ESTHER HERNANDEZ;
AARON JIM; and BIANCA HILL,

      **Defendants.**

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Plaintiff Christians in the Workplace Networking Group's (CWNG) Motion to Extend Discovery Deadline and for Leave to Take 12 Depositions (Doc. 93) and Defendants' Motion for Protective Order (Doc. 102). For the reasons outlined in this Opinion, the Court will grant both motions in part.

**I.    Relevant Background and Procedural History**

CWNG filed this lawsuit on April 8, 2022. (Doc. 1.) In the Scheduling Order entered on September 15, 2022, the Court set the following deadlines: discovery terminates April 28, 2023; discovery motions due May 18, 2023; pretrial motions due May 30, 2023. (Doc. 22 at 2.) The Court set this matter for jury trial on a trailing docket for November 6, 2023. (Doc. 24.)

The parties have filed several discovery motions, two of which warrant brief summaries here.[1] On October 26, 2022, CWNG filed a motion to compel more complete answers to several interrogatories and requests for production. (Doc. 27.) Defendants objected to the discovery in relevant part "because [CWNG] ask[ed] for documents as far back as 1995 . . . ." (*See* Doc. 80 at 3 (citing Doc. 30 at 8–10).) The Court noted that CWNG's "claims are based on its removal as an employee resource group, which stemmed from" a policy that Defendant National Technology and Engineering Solutions of Sandia, LLC (Sandia) implemented in 2018. (*Id.* at 8.) Thus, the Court found that "the relevant time period in this case is from August 2018 going forward" and ordered Defendants to produce responsive documents accordingly. (*Id.*)

On March 8, 2023, Defendants filed a motion for protective order and asked the Court, in relevant part, to bar CWNG from deposing the Sandia Rule 30(b)(6) witness on certain topics and to bar CWNG "from exceeding the allowable number of depositions in this matter." (*See* Doc. 78 at 1 (citing Docs. 69 at 1; 69-1).) The Court granted the motion in part. (*See id.*) The Court agreed that the topics noticed for the Sandia Rule 30(b)(6) witness's deposition concerned matters prior to 2018 and granted the motion on this issue. The Court further noted that CWNG noticed 13 depositions, in excess of the Scheduling Order that allows no more than ten by each side. (*Id.* at 2 (citing Doc. 22).) As CWNG had not filed a motion to amend the Scheduling Order, the Court found it had not shown good cause for the additional depositions. (*See id.* at 2.) Moreover, CWNG agreed, in its response to Defendants' motion, "to limit the number of depositions to nine." (*Id.* (citing Doc. 75 at 1).) Thus, the Court granted the motion on this issue. (*Id.*)

---

[1] Other motions included CWNG's motion to extend the expert disclosure deadline, which the Court denied (*see* Docs. 43; 81), CWNG's second motion to compel, which the Court granted in part (Docs. 45; 84), and Defendants' motion to compel, which the Court granted (Docs. 46; 85).

The Court held a telephonic status conference in this matter on April 26, 2023, to set a settlement conference and to check on the status of discovery. (*See* Doc. 91.) At that time, counsel for Plaintiff (J. Michael Considine, Jr.) alerted the Court to an issue he had noticing depositions for certain Sandia employees. (*See id.* at 1.) Considine also expressed a desire to depose additional Sandia employees, putting him at a total of 12 depositions or two over the limit allowed by the Scheduling Order. (*See id.*) Counsel for Defendants (Melissa Kountz and Samantha Hults) stated that they would agree to conduct depositions after the close of discovery, but they did not agree to exceed the allowable number of depositions. (*See id.*) The Court advised CWNG to file a motion on the issue. (*Id.*) CWNG filed its pending motion on this topic on April 27, 2023. (Doc. 93.)

Defendants assert that since the status conference, they have again told CWNG that they do not agree to "a wholesale reopening or extension of discovery" but will "stipulate to allowing [CWNG] to take two witness depositions (the amount remaining per the initial scheduling Order) after the close of discovery at dates to be determined in May 2023." (*See* Doc. 102 at 4.) "CWNG's response to Defendants' offer was" to file its pending motion to extend. (*See id.* (citing Doc. 93).)

On May 1, 2023, Kountz emailed Considine and offered "to stipulate to CWNG taking the depositions of **two**" Sandia employees "(Gary Sanders, Ben Mar, Chris LaFleur, or Chris Collins) after the close of the discovery . . . ." (Doc. 102-E.) Kountz stated that "Defendants are unwilling to otherwise extend discovery." (*Id.*) Kountz asked Considine to respond with the names of the two employees he wanted to depose and the "dates in May [he is] available for a deposition" so that she could coordinate with the appropriate employees. (*Id.*) Defendants assert that CWNG has not responded directly to Kountz's email. (Doc. 102 at 4.)

On May 9, 2023, Considine sent correspondence to defense counsel and asked if they were able to produce any of the four Sandia employees for deposition via Zoom on May 15, 2023. (Doc.

3

102-F.) Hults responded to the correspondence and noted that CWNG did not respond to Kountz's May 5 email. (*See* Doc. 102-G at 3.) Hults stated Defendants' willingness to proceed with two depositions per the May 5 email and invited Considine to call her the following day, May 10, 2023. (*Id.*) Counsel for the parties engaged in a telephone conversation after this email exchange, but the discovery issues were not resolved. (*See* Doc. 102 at 5.)

On May 11, 2023, Considine noticed the depositions of Benjamin Mar and Chris LaFleur.[2] (Doc. 102-A.) The notice states that the depositions would take place by Zoom on May 15, 2023, at 9:00 and 10:00 a.m., "as agreed upon by counsel." (*Id.*) Hults followed up with an email on May 12, 2023, to clarify Defendants' position that they were willing to agree to the late deposition of two employees "contingent upon CWNG's withdrawal of its Motion to Extend . . . ." (Doc. 102-H.) Hults's email cements Defendants' position agreeing to take two late depositions, declining to agree to re-open discovery for any other purpose, and declining to agree to additional depositions. (*See* Doc. 102-H.)

As the parties have been unable to independently agree on these issues, Defendants filed a Notice of Nonappearance and a Motion for Protective Order on May 12, 2023. (Docs. 101–02.)

**II. Legal Standards**

    **A.    Extensions of the Discovery Deadline**

The Court may extend the deadlines in the Scheduling Order for "good cause." *See, e.g.*,

---

[2] CWNG spells this name Le Fleur (*see* Doc. 102-A), while Defendants spell the name LaFleur (*see* Doc. 102-C). As the witness is an employee of Sandia, the Court will adopt Defendants' spelling of the name.
In its Notice of Depositions, CWNG included the names of two other witnesses—Carl Rhinehart and Rafael Gonzales— to be deposed "if the court permits up to 12 depositions." (*See* Doc. 102-A.) Defendants assert that they "have repeatedly informed [CWNG] that Chris Collins is the relevant leader of the Black Leadership Committee, however, [CWNG] has ignored this information and keeps listing the individual Carl Rhinehart." (Doc. 102 at 4 n.1.) The Court will refer to the leader of this committee as Chris Collins.
It is unclear who Rafael Gonzales is. CWNG does not refer to Gonzales in its own briefs. (Docs. 93; 99.) Defendants surmise that CWNG intends to refer to Rafael Gonzalez, the "current leader of the Hispanic Outreach for Leadership & Awareness ('HOLA')." (*Id.* at 5 n.2.)

*Utah Republican Party v. Herbert*, 678 F. App'x 697, 700 (10th Cir. 2017) (citations omitted); Fed. R. Civ. P. 6(b)(1)(A)–(B). Good cause "requires the moving party to show the deadline 'cannot be met despite the movant's diligent efforts.'" *Id.* at 701 (quoting *Gorsuch, Ltd., B.C. v. Wells Fargo Nat. Bank Ass'n*, 771 F.3d 1230, 1240 (10th Cir. 2014)). In determining whether to reopen discovery, relevant factors to examine include:

> 1) whether trial is imminent, 2) whether the request is opposed, 3) whether the non-moving party would be prejudiced, 4) whether the moving party was diligent in obtaining discovery within the guidelines established by the court, 5) the foreseeability of the need for additional discovery in light of the time allowed for discovery by the district court, and 6) the likelihood that the discovery will lead to relevant evidence.

*Smith v. United States*, 834 F.2d 166, 169 (10th Cir. 1987) (citations omitted).

### B.     Number of Depositions

"Unless the parties agree, leave of court is required before a party may conduct more than ten depositions." *Mackey v. Staples the Off. Superstore LLC*, No. CV 09-0023 JCH/WPL, 2010 WL 9523829, at *5 (D.N.M. Feb. 12, 2010) (citing Fed. R. Civ. P. 30(a)(2)(A)(i)). This provision both "assures judicial review under the standards of Rule 26(b)(2) for depositions in excess of ten" and "emphasizes that counsel have a professional obligation to develop a cost-effective discovery plan." *Id.* (citing Fed. R. Civ. P. 30 advisory committee's note to 1993 amendment).

> Rule 26(b)(2) requires the court to limit discovery if it is unreasonably cumulative or can be obtained from another source that is more convenient, less burdensome, or less expensive; if the party seeking the discovery has had ample opportunity to obtain the information; or if the burden or expense of the discovery outweighs the likely benefit—considering the needs and importance of the case, the amount in controversy, the parties' resources, and the importance of the discovery to the issues in the case.

*Id.* (citing Fed. R. Civ. P. 26(b)(2)(C)). "The mere fact that many individuals may have discoverable information does not necessarily entitle a party to depose each such individual." *Id.* (quoting *Dixon v. Certainteed Corp,* 164 F.R.D. 685, 692 (D. Kan. 1996)).

### III. Analysis of the *Smith* Factors

CWNG moves to extend discovery and to depose four witnesses—two more than the ten allowed in the Scheduling Order. (Doc. 93.) The Court notes at the outset that it does not appear from CWNG's motion or reply brief that it seeks to extend discovery for any purpose other than to take depositions. (*See* Docs. 93; 99.) Further, it is clear from the status conference and from the briefs and attachments thereto that the parties have been attempting to resolve their disagreement for the last several weeks. With that in mind, the Court turns to the *Smith* factors.

#### A. Imminence of Trial

Defendant concedes that trial is not imminent and that this factor weighs in CWNG's favor. (Doc. 97 at 4.)

#### B. The Request is Opposed

Defendant opposes the request to fully reopen discovery and to take more than ten depositions. (*See* Docs. 97; 102.) This factor weighs against CWNG.

#### C. Whether Defendants Will Be Prejudiced

Defendants asserts that "[a] blanket reopening of discovery prejudices [them]" because it interferes with the Scheduling Order "and unjustly delays resolution in this case." (Doc. 97 at 6.) They further assert that it will "driv[e] up the cost of the case[,]" which may decrease the likelihood of settlement. (*See id.*)

CWNG responds that granting the motion will cause "no prejudice to the Defendants, who agreed to [two] of the depositions . . . ." (Doc. 99 at 2.) The Court agrees with this point. And as explained below, the Court will only allow CWNG to take another two depositions, reducing the risk of prejudice.

CWNG further asserts that "[o]ther deadlines need not be changed[,]" or if they do, then a two-week extension will suffice and "will not affect the trial or conference dates." (*Id.*) The Court notes that the parties have neither requested nor received an extension to the deadlines in the Scheduling Order, save for CWNG's request to extend the deadlines for expert witnesses, which the Court denied. (*See* Docs. 43; 81.) Trial is currently set on a trailing docket to begin on November 6, 2023, and the Court will authorize only a short extension to the discovery and pretrial motion deadlines in this Order. (Doc. 24.) In sum, the Court finds this factor weighs in favor of reopening discovery for the limited purpose of taking two depositions.

**D.     CWNG's Diligence**

CWNG asserts that it "was diligent in obtaining discovery on the other [employee resource groups]." (Doc. 99 at 2.) Defendants disagree and state that "[e]ach of the four depositions involves information or allegations known [to CWNG] as of the filing of the Complaint." (Doc. 97 at 5.)

The Court agrees with respect to at least one of the four proposed deponents. Defendants point out that "Sanders was on [CWNG's] witness list as early as the Joint Status Report." (Doc. 97 at 6 (citing Doc. 19 at 4).) CWNG does not specifically respond to this assertion or explain why it waited until April 11, 2023, to attempt to serve Sanders. (*See* Docs. 93 at 1; 99.) The Court finds that CWNG has not shown it was diligent in attempting to depose Sanders.

**E.     Foreseeability of the Need for Discovery**

CWNG asserts that "before March 15, 2023[,] the extent of the differential treatment was mostly unknown." (Doc. 99 at 3.) On that date, CWNG deposed Sandia employee Aaron Jim, who testified that both the American Indian Outreach Committee (AIOC) and the Black Leadership Committee (BLC) had requirements in their charters similar to the requirement at issue in CWNG's charter, specifying that AIOC leadership must be Native American and that BLC

leadership must be Black. (*See* Doc. 99 at 2–3 (discussing Doc. 99-1 at 22–34).) Jim testified that he (or someone from Sandia) asked Benjamin Mar, leader of the AIOC, and Chris Collins, leader of the BLC, to change those charters, but he could not confirm that the groups actually changed the language. (*See* Doc. 99-1 at 22:13–34:22.) Jim further stated that the AIOC took the link to the charter off the website, so there was no longer any violation of the HR008 policy. (*See id.* at 31:4–18.)

It appears that CWNG asked for emails or documentation relevant to the discussions between Sandia and the AIOC and BLC employee resource groups on this issue. (*See, e.g.*, *id.* at 30:13–31:10; *see also* Doc. 99 at 3.) CWNG asserts that on April 14, 2023, Defendants produced documents and emails to and from the employee resource groups, but nothing that shed light on this topic. (*See* Doc. 99 at 3.) Thus, CWNG asserts, it was not foreseeable until April 14, 2023, that it would need to depose the leaders of these two groups. (*See id.*)

Defendants assert, however, that the need for these depositions was foreseeable, as Sanders was on CWNG's witness list, and "[t]he other three people lead or led Sandia employee resource groups that [CWNG] apparently asserts were treated more favorably, an allegation that . . . has been in the case since the outset." (Doc. 97 at 6 (citing Docs. 1 ¶ 55; 19 at 4).) Indeed, the Amended Complaint alleges that the AIOC "still requires its leadership to be native American . . . ." (Doc. 4 ¶ 65.) Still, CWNG tried to obtain the relevant information through written discovery and by deposing a relevant Sandia employee. It could not have known that these methods would prove fruitless. The Court finds this factor weighs very slightly in favor of allowing an extension of discovery for the limited purpose of deposing Mar and Collins.

With respect to LaFleur, who is or used to be the leader of the "Gay/Lesbian" employee resource group (*see* Docs. 91 at 1; 93 at 1), CWNG asserts that "[t]here is evidence that [the

8

Gay/Lesbian employee resource group was] treated differently than [CWNG] as far as permission for speakers, funding, reaction to complaints . . . , leadership requirements and their enforcement." (Doc. 93 at 1.) CWNG does not attempt to explain why it failed to seek a deposition from LaFleur prior to April 2023, nor does it explain what other avenues it explored to determine whether it could obtain discovery about this topic in another way. (*See id.*) The Court finds this factor weighs against allowing an extension of discovery to depose LaFleur.

      **G.**      **Whether the Depositions Will Lead to Relevant Evidence**

CWNG seeks to depose the AIOC and BLC group leaders to discover whether they changed relevant language in their charters after Sandia employees requested that they do so. (*See* Doc. 99.) CWNG does not offer any explicit argument on this factor, but it is clear that at least some of CWNG's claims hinge on allegations that it was treated differently than other employee resource groups. (*See* Doc. 4.)

It is less clear what relevant evidence CWNG seeks to discovery from Sanders or from the leader of the Gay/Lesbian employee resource group. CWNG asserts that in October 2016, Sanders "sent an e-mail to 1500 people stating [that] the removal of" signs regarding a Sandia Pride event posted by the Gay/Lesbian employee resource group "was 'intolerant' and 'against Sandia's corporate value [to] 'respect each other.'" (Doc. 93 at 1–2.) Sometime after that there was vandalism to a sign posted by CWNG, but "there was no such e-mail or reaction." (*Id.* at 2.) Presumably, CWNG seeks to question Sanders regarding the disparity in his responses. (*See id.*) Yet, this incident occurred before the relevant time period. Thus, CWNG has not shown that deposing Sanders will lead to the discovery of relevant evidence.

Regarding LaFleur, CWNG does not specify the time period of any alleged discrepancies between treatment of the Gay/Lesbian employee resource group and CWNG. Further, CWNG

9

states that it learned in April 2023 that LaFleur "agreed with CWNG that [employee resource groups] should be able to select their own leaders." (Doc. 99 at 3.) CWNG does not explain how this revelation made LaFleur's deposition likely to lead to relevant evidence.

In sum, this factor weighs in favor of allowing the depositions of Mar and Collins, and against allowing the depositions of Sanders and LaFleur.[3]

## IV. Conclusion

In sum, the Court finds that CWNG has shown good cause to extend discovery for the limited purpose of taking two depositions: that of Mar and Collins. Defendants agree that trial is not imminent. While Defendants oppose a "wholesale" extension of discovery, Defendants have shown a willingness to extend discovery for the limited purpose of conducting two depositions. The Court finds that a brief extension of the deadlines will not prejudice Defendants. CWNG has established that it did not foresee the need to depose Mar and Collins until after it received written discovery from Defendants on April 14, 2023, and that the depositions are likely to lead to relevant evidence. Moreover, the Court finds that the burden or expense of these two depositions does not outweigh the likely benefit.

**IT IS THEREFORE ORDERED** that Defendants' Motion for Protective Order (Doc. 102) is **GRANTED IN PART** and the four witnesses are excused from attending any deposition on May 15, 2015. The motion is otherwise denied.

**IT IS FURTHER ORDERED** that CWNG's Motion to Extend (Doc. 93) is **GRANTED IN PART** in that the discovery deadline in this matter is extended through **June 9, 2023** for the limited purpose of conducting the depositions of Ben Mar and Chris Collins; discovery motions

---

[3] Because CWNG offers no argument regarding Rafael Gonzales, the Court cannot find that CWNG was diligent in seeking the discovery, that it could not foresee the need to depose Rafael Gonzales, or that deposing Gonzales will lead to the introduction of relevant evidence. Nor does CWNG establish that the burden or expense of the deposition outweighs the likely benefit. Thus, the Court finds that these factors weigh against allowing Gonzales's deposition.

will be due on or before **June 16, 2023**; and pretrial motions will be due on or before **June 23, 2023**. The motion is otherwise denied.

  **IT IS FURTHER ORDERED** that the parties shall confer by phone no later than **May 19, 2023**, and select two mutually agreeable dates (one scheduled date and one "fallback" date) between June 2, 2023, and June 9, 2023, to conduct the two depositions.

_____
DAMIAN L. MARTINEZ
UNITED STATES MAGISTRATE JUDGE