IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

CHRISTIANS IN THE WORKPLACE
NETWORKING GROUP,

    Plaintiff,

v.                                                       No. 1:22-CV-00267-DHU-DLM

NATIONAL TECHNOLOGY AND
ENGINEERING SOLUTIONS OF
SANDIA LLC., ET AL.,

    Defendants.

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on National Technology and Engineering Solutions of Sandia, LLC ("Sandia"), Esther Hernandez, Aaron Jim, and Bianca Hill ("Defendants") Motion for Summary Judgment on Plaintiff's Claim of Religious Discrimination. Doc. 126. Christians in the Workplace Networking Group ("Plaintiff") filed a response, Doc. 145, to which Defendants filed a reply, Doc. 160. On August 17, 2023, the Court orally granted the motion after a hearing on the merits and stated that it would later issue a written Memorandum Opinion and Order. *See* Order, Doc. 180; Clk.'s Mins., Doc. 179. The Court now enters the following written Order.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Sandia has several employer-sponsored employee resource groups ("ERGs"), based on social identity, shared characteristics, or life experiences. Defendants' Undisputed Material Fact ("Defs.' UMF") ¶ 3. Participation in ERGs is not an employment requirement and is a volunteer activity. *Id*. ¶ 5. Plaintiff was an employer-sponsored ERG prior to November 18, 2020. *Id*. ¶ 6. Plaintiff's members and leaders are exclusively employees of Sandia. *Id*. ¶ 8. Non-employees

cannot be members or leaders of Sandia. *Id.*

There are various documents at issue in this lawsuit. First, Plaintiff has a "Mission/Vision/Purpose Statement" that its members are, among other things, "United in Christ, serving Sandia." *Id*. ¶ 10. Second, Plaintiff has written "Values" provisions which include, among other things, to "serve others" and the group's belief that "Christ is center." *Id*. ¶ 11. Third, Plaintiff's "Statement of Faith" dictates that only Christian employees who attest to the detailed belief system can hold leadership positions in the group. *Id*. ¶ 12. The Statement of Faith contains what Plaintiff believes are "Orthodox Christian" beliefs. *Id*. ¶ 13. Fourth, Plaintiff had a 2019 Strategic Plan. *Id*. ¶ 16. The Strategic Plan contained the Governance Structure, including restriction in Sections F and G that are relevant to this lawsuit:

> F. Based on biblical principles, it is the position of the CWNG that any person who is involved in moral or ethical behavior which contradicts clearly defined issues outlined in scripture will not be considered for a leadership role in CWNG activities.
> G. In order to maintain the integrity of the CWNG and its leaders, a Steering Committee Member may be reviewed by the Steering Committee, and if necessary, removed from office if it is determined that the conduct or beliefs of the person in question will endanger the integrity of CWNG. A majority vote by the Steering Committee will be required for removal from office. The Steering Committee membership

*Id.*

Based upon CWNG's Governance Structure and Statement of Faith, Sandia employees who are members of any another religion, or employees who are Christian but do not attest to the "Orthodox Christian beliefs" could not hold leadership positions in the group. *Id*. ¶¶ 18-19.

In August 2018, Sandia issued HR008, its Non-discrimination and Anti-Harassment Policy ("HR088"). *Id*. ¶ 21. HR008 prohibits and has a "zero tolerance approach" of any form of discrimination harassment and retaliation based upon: age, ancestry, color, ethnicity, gender, gender expression, gender identity, genetic information, marital or family status, mental or physical disability, national origin, pregnancy, race, religion, serious medical condition, sexual

orientation, and U.S. military veteran's status. *Id*. ¶ 23. HR008 applies to all Sandia National Laboratory organizations and all members of the workforce and organizations. *Id*. ¶ 24.

In 2019, Sandia requested that all ERGs, including Plaintiff, provide their Strategic Plans, Charters and other documents for review. *Id*. ¶ 26. In response, Plaintiff supplied a Strategic Plan. *Id*. ¶ 27. Sandia believed that Sections F and G of the Governance Structure, and the requirement that all leaders must ascribe to the Statement of Faith were violations of HR008 and asked Plaintiff to amend its Strategic Plan. *Id*. ¶¶ 27-28. Plaintiff requested a religious accommodation that would allow it to leave in the language due to a sincerely held religious belief. *Id*. ¶ 29. Sandia representatives met with Plaintiff's leaders a number of times and requested that Plaintiff provide alternative language for the provisions that Sandia believed conflicted with HR008. *Id*. ¶ 30. Plaintiff proposed that it replace its Statement of Faith with a specific portion of the Bible, 1 Timothy 3. *Id*. ¶ 31. Sandia rejected this proposal because it believed the proposed language would still violate HR008. *Id*. ¶ 32.

Sandia then proposed removing Section F and G of Plaintiff's Governance Structure and the requirement that all leaders ascribe to the Statement of Faith. *Id*. ¶ 33. Sandia's proposal did not request any other changes to the Strategic Plan, such as revising the Executive Summary, Mission/Vision/Purpose, or Values provisions. *Id*. ¶ 34. Plaintiff rejected Sandia's proposal and ultimately determined it would not make any revisions to its Strategic Plan. *Id*. ¶ 35.

On November 18, 2020, Sandia withdrew its sponsorship of Plaintiff as an ERG because Plaintiff would not comply with the request to modify their leadership requirements. *Id*. ¶ 36.

During this process Sandia, also learned that two other ERGs, the American Indian Outreach Committee ("AIOC") and Black Leadership Committee ("BLC"), contained exclusionary language in their charters. The AIOC restricted its leadership to employees of

3

American Indian descent, and BLC restricted membership and leadership to Black employees. *Id*. ¶ 37.[1] Testimony indicates that Sandia representatives had concerns with the BLC's and AIOC's similar restrictions. Collins Dep. 14:1-15; 15:18-20, Doc. 126-11; Mar Dep. 53:5-22, Doc. 126-12.

Even though it is no longer a Sandia-sponsored ERG, Plaintiff still exists as an employee group, hold functions, and uses Sandia resources. Defs.' UMF ¶ 41. Even after Sandia's withdraw of its sponsorship of Plaintiff, Plaintiff's members are still able to practice their religion and beliefs. *Id*. ¶ 42. However, Plaintiff's member, Jared Colombel, testified during a deposition that "being an open Christian at Sandia was very hard." Colombel Depo. 41:20-21, Doc. 145-2. Mr. Colombel further indicated that (1) Plaintiff was not allowed to have certain speakers, (2) Plaintiff had trouble holding events, (3) Plaintiff's members felt they could not choose their own leaders, (3) members felt they were the targets of hostility by Sandia, (4) Mr. Colombel had a dispute with Sandia of his use of a religious email tag line, but he was ultimately able to keep the email tag line. *See id.* at 49:11-49 - 50:1-7; 51:8-10. Another of Plaintiff's members, Jeffrey Martin, testified that a Sandia representative had previously told him that Sandia wanted "an all faiths group instead of a Christian group as an ERG." Martin Dep. 40:18-20, Doc. 145-7.

In May 2022, Plaintiff filed its Amended Complaint and named Sandia and three individual employees. In Count 1 of its Amended Complaint, Plaintiff alleges a violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*. ("Title VII"). In Counts 2 through

---

[1] As part of their argument that they treated all ERGs the same, Defendants submitted testimony allegedly showing that Defendants demanded that Plaintiff, AOIC and BLC change their documents and that the AOIC and BLC complied. Plaintiff points out that the testimony is less clear because it contains conversation about scheduling meetings and other matters. The Court does not decide whether Defendants treated other ERGs more favorably, but instead considers this a fact over which there is a genuine dispute. However, it is not a material dispute because the Court disposes of Defendants' motion on other grounds.

4

6, Plaintiff alleges violations of the First and Fourteenth Amendments to United States Constitution which and Plaintiff seeks to vindicate under 42 U.S.C. § 1983. Finally, in Count 7 Plaintiff alleges that Defendants conspired to deprive Plaintiff of its First and Fourteenth Amendment rights.

On June 23, 2023, Defendants filed the instant Motion for Summary Judgment on Plaintiff's Claim of Religious Discrimination on Plaintiff's Title VII claim.[2] On August 17, 2023, the Court orally granted the motion after a hearing on the merits and stated that it would later issue a written Memorandum Opinion and Order. *See* Order, Doc. 180; Clk.'s Mins., Doc. 179. The Court now enters the following written Order.

## II. SUMMARY JUDGMENT LEGAL STANDARD

A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Proc. 56(a). "An issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Adler v. Wal–Mart Stores, Inc.,* 144 F.3d 664, 670 (10th Cir. 1998). "An issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim." *Id.* "Put differently, the question ... is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Becker v. Bateman*, 709 F.3d 1019, 1022 (10th Cir. 2013) (citation, brackets, and quotation marks omitted).

"When applying this standard, we view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." *Ribeau v. Katt*, 681 F.3d 1190,

---

[2] Defendants filed separate motions for summary judgment on Plaintiff's other claims. Only Plaintiff's Title VII claim is at issue in the instant motion.

1194 (10th Cir. 2012) (quotation marks omitted). "Unsubstantiated allegations carry no probative weight in summary judgment proceedings." *Hasan v. AIG Prop. Cas. Co.*, 935 F.3d 1092, 1098 (10th Cir. 2019) (citation omitted). "Rather, to defeat a motion for summary judgment, evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise." *Id*. (brackets and quotation marks omitted).

### III. DISCUSSION

Defendants argue that they are entitled to summary judgment because: (1) an ERG does not have standing to sue under Title VII, (2) Defendants did not treat Plaintiff differently from other ERGs, (3) Plaintiff cannot establish a prima facie Title VII case, (4) if Plaintiff can establish a prima face case, its claim still fails because Defendants offered Plaintiff a reasonable accommodation, and (5) Plaintiff's proposed accommodation would result in an undue hardship. As explained more below, the Court concludes that Plaintiff has standing. The Court also concludes that Plaintiff failed to establish a prima facie case under Title VII. Alternatively, if Plaintiff did established a prima facie case, its Title VII still fail because Defendants offered Plaintiff a reasonable accommodation. The Court does not address or decide Defendants' arguments that they treated all ERGs alike, or their undue hardship arguments.

#### A. Standing

Defendants first argue that Plaintiff, an ERG, lacks standing to bring Title VII claims. Article III of the Constitution permits federal courts to decide only "Cases" or "Controversies." U.S. Const. art. III, § 2. "To establish Article III standing, an injury must be "concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (quotation marks and citation omitted). The plaintiff invoking federal jurisdiction bears the burden of demonstrating

standing. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561 (1992). "To survive a summary judgment challenge to standing, the plaintiff must set forth by affidavit or other evidence specific facts that, if taken as true, establish each of the elements of standing." *Rio Grande Found. v. Oliver*, 57 F.4th 1147, 1159 (10th Cir. 2023) (citation and quotation marks omitted).

Additional requirements must be satisfied when the plaintiff is an organization suing on behalf of its members. *Utah Physicians for a Healthy Env't v. Diesel Power Gear, LLC*, 21 F.4th 1229, 1241 (10th Cir. 2021). An organization has standing to bring suit on behalf of its members if (1) at least one of its members would have standing to sue in the member's own right; (2) the interest it seeks to protect is germane to its purpose; and (3) neither the claim asserted nor the relief requested requires the member to participate in the lawsuit. *Speech First, Inc. v. Shrum*, 92 F.4th 947, 949 (10th Cir. 2024) (citing *Friends of the Earth v. Laidlaw*, 528 U.S. 167, 181 (2000)).

Defendants argue that Plaintiff, an ERG, "is not among the class protected by Title VII." Doc. 126 at 1. The caselaw on a private organization's standing to bring Title VII claims appears to be underdeveloped and the Tenth Circuit's position, if any, is unknown. The best encapsulation of the rules comes from a federal district opinion addressing the standing of an organization to bring Title VII claims on behalf of African-American employees of the Library of Congress and on its own behalf. *See Cook v. Billington*, 541 F. Supp. 2d 358, 360–61 (D.D.C. 2008). The court explained that:

> Title VII protects 'employees or applicants for employment' from discrimination by federal government agencies. 42 U.S.C. § 2000e–16. It does not protect organizations from discrimination. *Id.* In *Fair Employment Council of Greater Washington, Inc. v. BMC Marketing Corp.,* 28 F.3d 1268, 1277–78 (D.C. Cir. 1994), however, the D.C. Circuit found that an organization may have standing to bring a claim under Title VII if the violation of an individual's rights causes injury to an organization. *Id.* at 1278 (finding that Title VII "confer[s] a cause of action upon everyone who meets the Article III requirements—that is, anyone genuinely injured by conduct that violates someone's rights"). In other words, while an organization cannot assert a cause of action based on a violation of its own rights

7

> under Title VII, an organization may have standing to sue for injuries that are *derivative* of a violation of an individual's Title VII rights.

*Id*. at 363 (footnote omitted). Applying this rule, the court found that the organization lacked standing to assert Title VII claims *on its own behalf* against the Library of Congress. *See id*. But the the organization "ha[d] standing to bring claims in a representative capacity," because "the individual employees ha[d] standing to bring claims on their own behalf." *Id. See also Cleveland Branch, N.A.A.C.P. v. City of Parma, OH*, 263 F.3d 513, 524 (6th Cir. 2001) (holding that the NAACP had standing to sue under Title VII on behalf of a member who, in turn, "satisfied all the necessary requirements for standing.")

The Court holds that Plaintiff has associational standing through its members. Plaintiff introduced the deposition transcript of one member, Jared Colombel, who testified that "being an open Christian at Sandia was very hard." Colombel Depo. 41:20-21, Doc. 145-2. Mr. Colombel further indicated that Plaintiff was not allowed to have certain speakers, that members felt they could not choose their own leaders, and that they felt they were the targets of hostility by Sandia. *See id.* at 49:11-49 - 50:1-7. Such evidence establishes injury-in-fact that is traceable to the Defendants' actions. Further, Plaintiff's constitutional injuries would be redressable by a favorable decision. Finally, the interests at stake in this action are germane to Plaintiff's purpose and there is no indication that the individual members would be required to participate in the lawsuit. *See Cook*, 541 F. Supp. 2d at 363 (holding that an organization's Title VII suit did not require the participation of individual members). The Court therefore holds that Plaintiff has met the elements of associational standing.

However, as explained below, Plaintiff cannot establish a prima facie case under Title VII because Plaintiff introduced no evidence that its members were fired or were subjected to an adverse employment action.

**B. Title VII Prima Facie Case**

"Title VII makes it 'unlawful ... for an employer ... to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... religion....'" *Tabura v. Kellogg USA*, 880 F.3d 544, 549 (10th Cir. 2018) (quoting 42 U.S.C. § 2000e–2(a)(1)).[3] "The term 'religion' includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate ... an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j). "Title VII, thus, requires that an employer, short of undue hardship, make reasonable accommodations to the religious needs of its employees." *Tabura*, 880 F.3d at 549 (quoting *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 66 (1977)) (internal quotation marks omitted).

"In religion-accommodation cases, [the court applies] a version of *McDonnell Douglas*'s burden-shifting approach."[4] *Abercrombie & Fitch Stores, Inc.*, 731 F.3d at 1122. "To survive summary judgment on a religious discrimination claim of failure to accommodate, the employee initially bears the burden of production with respect to a prima facie case." *Thomas v. Nat'l Ass'n of Letter Carriers*, 225 F.3d 1149, 1155 (10th Cir. 2000) (citation omitted). "The prima facie case requires the employee to show that (1) he or she had a bona fide religious belief that conflicts with

---

[3] "Religion-accommodation claims are a subset of the types of religion-discrimination claims that an applicant or employee may present under Title VII." *E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, 731 F.3d 1106, 1120 (10th Cir. 2013), *rev'd on other grounds by E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768 (2015). "A claim for religious discrimination under Title VII can be asserted under several different theories, including disparate treatment and failure to accommodate." *Id* (citation omitted).

[4] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

an employment requirement; (2) he or she informed his or her employer of this belief; and (3) he or she was fired [or not hired] for failure to comply with the conflicting employment requirement." *Abercrombie & Fitch Stores, Inc.*, 731 F.3d at 1122 (internal quotation marks omitted). Defendants dispute the first and third elements. For its part, Plaintiff made no arguments about its prima facie case.[5]

The Court need only address the third element—whether a firing occurred—to resolve Defendants' motion.[6] Simply put, there is no record evidence that Defendants fired any of Plaintiff's members. Plaintiff appears to rely on statements by one Mr. Colombel about the hostility from Sandia because of his Christian beliefs. However, there is still no evidence that any of Plaintiff's members were actually fired. And Plaintiff cites no authority that the hostility Mr. Colombel experienced can satisfy the third element. *Cf. Tabura*, 880 F.3d at 550 (third element met where the employer "fired [p]laintiffs for failing to work their scheduled Saturday shifts."); *Christmon v. B&B Airparts, Inc.*, 735 F. App'x 510, 512 (10th Cir. 2018) (third element met because the plaintiff "was ultimately fired for violating [the employer's] sexual harassment policy.")

---

[5] Plaintiff mentions Title VII law under section seven of its response, which is titled "Qualified Immunity." But Defendants' motion does never raised qualified immunity as a defense to Plaintiff's Title VII claim. Section seven also includes a long and uninterrupted paragraph on irrelevant matters that Defendants did not seek summary judgment on in the current motion.

[6] Defendants describe the third element as whether an "adverse action" occurred. However, in Title VII religious accommodation cases, the Tenth Circuit has described the third prong as whether the employee was fired or not hired, not whether a general adverse employment action occurred. *See Tabura*, 880 F.3d at 549 (describing the third prong as whether "the employer fired the employee for failing to comply with the job requirement."); *Abercrombie & Fitch Stores, Inc.*, 731 F.3d at 1122 (asking whether the employee "was fired [or not hired] for failure to comply with the conflicting employment requirement."). Because these opinions indicate that the adverse employment action in question is a firing or refusal to hire, the Court assumes that standard applies.

Even if Plaintiff could establish the third element with evidence of something other than a firing, Plaintiff has failed to do so. Plaintiff states that it "cannot recruit, sponsor speakers, meet with the Lab Director with other ERGs[,] obtain funding, be involved in Diversity Cinema, write articles for Sandia News, use the premises for gatherings [or] receive[ ] ERG e-mails." Doc. 145 at 3. However, with the exception of recruiting and sponsoring speakers, Plaintiff has provided no clear record citations to support these allegations and it is not the Court's job to search for them. *See Cross v. Home Depot*, 390 F.3d 1283, 1290 (10th Cir. 2004) (stating that on a motion for summary judgment, "it is the responding party's burden to ensure that the factual dispute is portrayed with particularity, without ... depending on the trial court to conduct its own search of the record.") (citation omitted). Even if these allegations were adverse employment actions, Plaintiff has still failed to submit a single item of evidence showing that Plaintiff or its members experienced a significant change in employment such as a firing, failing to promote, reassignment, or a decision causing a significant change in benefits.

Plaintiff has submitted no evidence that Plaintiff's members were fired for failing to comply with an employment requirement, nor evidence of a significant change in employment status occurred. Plaintiff has not established a prima facie claim of failure to accommodate, and Defendants are entitled to summary judgment.

**C. Reasonable Accommodation**

Alternatively, Defendants' summary judgment motion is granted because they provided a reasonable accommodation. "Accommodate ... means ... allowing the plaintiff to engage in her religious practice despite the employer's normal rules to the contrary." *Tabura*, 880 F.3d at 550. While Title VII requires reasonable accommodation, "[i]t does not require employers to accommodate the religious practices of an employee in exactly the way the employee would like

to be accommodated." *Pinsker v. Joint Dist. No. 28J of Adams & Arapahoe Ctys.*, 735 F.2d 388, 390–91 (10th Cir. 1984) (citations omitted). "Thus, the accommodation may be reasonable even though it is not the one that the employee prefers." *Christmon*, 735 F. App'x at 514. "Once the employer has provided a reasonable accommodation, it 'need not further show that each of the employee's alternative accommodations would result in undue hardship.'" *Tabura*, 880 F.3d at 551 (quoting *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 70 (1986)).

In their motion, Defendants highlight the following undisputed evidence as steps they took to accommodate Plaintiff's religious beliefs: (1) they met with Plaintiff a number of times to discuss Plaintiff's request for a reasonable accommodation; (2) after some back-and-forth with Plaintiff, Defendants proposed removing Section F and G of Plaintiff's Governance Structure, and the requirement that all leaders ascribe to the Statement of Faith, (3) Defendants did not otherwise request any other changes to the Strategic Plan, including to its Executive Summary, Mission/Vision/Purpose, or Values provisions, thus preserving those documents' Christian-centric focus.

The Court agrees with Defendants that they took reasonable steps. The evidence indicates that Defendants attempted to resolve the situation by meeting with Plaintiff a number of times and gave Plaintiff the opportunity to make changes to its documents on its own terms. Plaintiff seems to argue that Defendants had no business asking it to change its documents in the first place, and the fact that Defendants did shows Plaintiff was targeted, not that it was being accommodated. However, evidence in the record shows that Sandia officials were concerned about other ERGs' similar restrictions and that, at least with respect to the BLC, its charter was amended. *See* Collins Dep. 15:12-14, 15:18-20, Doc. 126-11 (witness recalling a "discussion regarding updating the charter to include more inclusive language for membership" and that stating that BLC's charter

was in fact amended); Mar Dep. 53:5-13, Doc. 126-12 (witness stating that for the "AOIC to maintain its ERG status" the AIOC's restrictions on leadership positions would need to "change"). Defendants' evidence indicates that they reasonably accommodated Plaintiff, and Plaintiff's evidence has failed to raise a genuine issue of material fact showing otherwise. Finally, Defendants correctly point out that their actions "did not require [Plaintiff's] leaders to modify their religious beliefs," Doc. 126 at 16, which is a valid consideration. *See Pinsker*, 735 F.2d at 391 (holding that a school district's policy was a reasonable accommodation even though it required Jewish teachers to take occasional unpaid leave to observe religious holidays because the policy "jeopardized neither [the plaintiff's] job nor his observation of religious holidays").

In summary, Defendants met their burden of showing that they reasonably accommodated Plaintiff's religious practices and Plaintiff has failed to proffer evidence sufficient to raise a genuine issue of material fact. As a result, Defendants are entitled to summary judgment. Because Defendants offered Plaintiff a reasonable accommodation, the Court need not reach the question of whether Plaintiff's preferred accommodation would have imposed an undue hardship.

## CONCLUSION

For the reasons stated herein and during the August 17, 2023, hearing, Defendants National Technology and Engineering Solutions of Sandia, LLC, Esther Hernandez, Aaron Jim, and Bianca Hill's Motion for Summary Judgment on Plaintiff's Claim of Religious Discrimination (Doc. 126) is GRANTED.

IT IS SO ORDERED.

_____
HON. DAVID HERRERA URIAS
UNITED STATES DISTRICT JUDGE